## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CORINNA MARLISS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-1966 |
| v. ) | |
| ) | CIVIL ACTION |
| EXPERIAN INFORMATION SOLUTIONS, ) | |
| INC., AMERICAN EXPRESS COMPANY, ) | JURY TRIAL DEMANDED |
| and AMERICAN EXPRESS TRAVEL ) | |
| RELATED SERVICES COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, CORINNA MARLISS ("Plaintiff") brings this action on behalf of herself against defendants EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), AMERICAN EXPRESS COMPANY ("Amex"), and AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. ("Amex Travel") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendants for damages resulting from violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA").

2.      Defendants furnished and reported inaccurate information about Plaintiff's Amex account on Plaintiff's personal Experian credit report after her objections and disputes.

1

3.     Specifically, Defendants improperly reported the delinquency, charge-off, and purge date of Plaintiff's Amex account on Plaintiff's Experian credit report. After being put on notice of the inaccurate reporting, Defendants continued to furnish and report the Amex account so that the negative reporting would continue on record for longer than the seven-year period allowed under the FCRA. Along the way, Defendants failed to properly investigate Plaintiff's disputes and reported inaccurate information in response to Plaintiff's disputes.

## JURISDICTION

4.     Jurisdiction is proper under 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 1331, and 15 U.S.C. § 1681p (FCRA) as this action arises under the laws of the United States.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within Illinois and this judicial district.

## PARTIES

6.     Plaintiff Corinna Marliss is a natural person who resides in Vernon Hills, Illinois.

7.     Defendant Experian is an Ohio corporation with its principal place of business located at 505 City Parkway West, Orange, California 92868. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

8.    Experian is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

9.    Defendant Amex is a New York multinational financial services corporation with its principal place of business located at 200 Vesey Street, New York, New York 10285. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

10.   Defendant Amex Travel is a New York corporation and Amex's principal operating subsidiary, with its principal place of business located at 200 Vesey Street, New York, New York. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604 (hereinafter Amex and Amex Travel collectively referred to as "Amex").

11.   Experian and Amex regularly conduct business in Illinois.

## FACTS SUPPORTING THE CAUSES OF ACTION

12.   In December 2004, Plaintiff entered into a credit card agreement with Amex.

13.   After making purchases using her Amex credit card, Plaintiff accrued a balance.

14.   Plaintiff made regular payments toward the balance on her Amex account, but was financially unable to make payments starting in 2012.

15.     On October 15, 2012, Plaintiff made her last payment on her Amex account. After failing to make payments, Plaintiff became delinquent.[1]

16.     In 2013, approximately 180 days after Plaintiff's delinquency, Amex charged off the Amex account and reported the charge-off to the credit bureaus, including defendant Experian.[2]

17.     After the charge-off, Amex no longer sought to collect the debt from Plaintiff. Amex retained the charged-off debt and did not resell it.

18.     After Plaintiff's delinquency, the reporting of the Amex account was scheduled to remain on Plaintiff's Experian credit report for seven years, at which time the negative reporting would be removed under the requirements of the FCRA (hereinafter "purge date"). The purge date for the Amex account is November 2019.

19.     Experian did not report the date of Plaintiff's first delinquency on the Amex account, that the Amex account was charged-off in 2013, or report that the Amex account was scheduled to continue on record until 2019 (seven years after Plaintiff's first delinquency in 2012).

A.     <u>January 9, 2017 Experian Credit Report.</u>

20.     On January 9, 2017, Plaintiff pulled a copy of her Experian credit report.

21.     Plaintiff's Experian credit report listed her Amex account as a potentially "negative" account, that affected her creditworthiness.

---

[1] "First delinquency" is generally defined as the consumer's first missed payment.

[2] A creditor "charges-off" a debt when it treats the debt "as a loss or expense because payment is unlikely." *See* Black's Law Dictionary 113 (8th ed. 2004).

22.     Experian did not report Plaintiff's first delinquency in 2012, charge-off in 2013, or purge date in 2019, a date seven years after Plaintiff's first delinquency.

23.     Instead, Experian inaccurately reported the Amex account as charged-off in December 2016, and that the reporting of the Amex account would continue on record for seven years after the incorrect charge-off date, until September 2023, four years longer than the correct 2019 purge date.

24.     Experian specifically reported:

   a. Charge-Off: December 2016;
   b. Date of Status: December 2016;
   c. Status: "Account charged off/Never late $4,642 written off $2,623 past due as of Dec 2016. **This account is scheduled to continue on record until Sep 2023**;" and
   d. Comment: "Account closed at credit grantor's request."

Exhibit A (emphasis added).

## B.     June 22, 2017 Experian Credit Report.

25.     On June 22, 2017, Plaintiff pulled another copy of her Experian credit report.

26.     In the June 22, 2017 report, Experian reported the Amex account as charged-off in May 2017, and that the reporting of the Amex account was scheduled to continue on record for seven years thereafter, until February 2024.

27.     Despite the charge-off, Experian also reported an additional past-due amount of $44.00 compared to the amount listed on the January 9, 2017 report.

28.     Experian specifically reported:

   a. Charge-Off: May 2017;
   b. Date of Status: May 2017;

    c.   Status: "Account charged off/Never late $4,642 written off $2,843 past due as of May 2017. **This account is scheduled to continue on record until Feb 2024;**" and

    d.   Comment: "Account closed at credit grantor's request."

Exhibit B (emphasis added).

**C.**    **July 3, 2017 & July 5, 2017 Experian Credit Reports.**

    29.    On July 3, 2017 and July 5, 2017, Plaintiff pulled copies of her Experian credit reports.

    30.    In the July 3, 2017 and July 5, 2017 reports, Experian reported the Amex account as charged-off in June 2017, and that the reporting of the Amex account was scheduled to continue on record for seven years thereafter, until March 2024.

    31.    Experian also reported an additional past-due amount of $44.00 compared to the June 22, 2017 report.

    32.    Experian specifically reported:

    a.   Charge-Off: June 2017;

    b.   Date of Status: June 2017;

    c.   Status: "Account charged off/Never late $4,642 written off $2,887 past due as of June 2017. **This account is scheduled to continue on record until Mar 2024;**" and

    d.   Comment: "Account closed at credit grantor's request."

Group Exhibit C (emphasis added).

**D.**    **September 21, 2017 Experian Credit Report.**

    33.    On September 21, 2017, Plaintiff pulled another copy of her Experian credit report.

34.     In the September 21, 2017 report, Experian now reported the Amex account as charged-off in August 2017, and that the reporting of the Amex account was scheduled to continue on record for seven years thereafter, until May 2024.

35.     Experian also reported an additional past-due amount of $88.00 compared to the previous report, which stated $44.00.

36.     Experian specifically reported:

a.  Charge-Off: August 2017;

b.  Date of Status: August 2017;

c.  Status: "Account charged off/Never late $4,642 written off $2,975 past due as of Aug 2017. **This account is scheduled to continue on record until May 2024;**" and

d.  Comment: "Account closed at credit grantor's request."

Exhibit D (emphasis added).

**E.    October 3, 2017 Experian Credit Report.**

37.     On October 3, 2017, Plaintiff received a copy of her Experian credit report.

38.     In the October 3, 2017 report, Experian reported the Amex account as charged-off in September 2017, and that the reporting of the Amex account was scheduled to continue on record for seven years thereafter, until June 2024.

39.     Despite the charge-off, Experian also reported an additional past-due amount of $44.00 compared to the September 21, 2017 report.

40.     Experian specifically reported:

a.  Charge-Off: September 2017;

b.  Date of Status: September 2017;

7

c. Status: "Account charged off/Never late $4,642 written off $3,107 past due as of Sep 2017. **This account is scheduled to continue on record until Jun 2024;**" and

d. Comment: "Account closed at credit grantor's request."

<u>Exhibit E</u> (emphasis added).

## F. <u>October 18, 2017 Credit Denial.</u>

41. In the intervening period, Plaintiff applied for credit with BCU.

42. On October 18, 2017, Plaintiff received a denial of her BCU loan application. <u>Exhibit F.</u>

43. The credit denial was based upon Plaintiff's Experian credit report.

44. Reasons for the denial included (a) serious delinquency, (b) number of accounts with delinquency, (c) too few accounts currently paid as agreed, and (d) high balance to credit limit on accounts.

## G. <u>Plaintiff's November 14, 2017 Dispute Letter to Experian.</u>

45. On November 14, 2017, Plaintiff sent a letter to Experian disputing the accuracy of the credit reporting of the Amex account, including the first date of delinquency, the date of the reported charge-off, and the purge date of her Amex account. <u>Exhibit G.</u>

46. In her dispute letter, Plaintiff stated that her last payment on the account was October 15, 2012, and that a negative listing should only remain on a credit file for seven years from the date of the last payment. Plaintiff disputed Experian's reporting of the Amex account as scheduled to continue on record until July 2024 because that date was more than seven years after Plaintiff's first delinquency. <u>Id.</u>

47.     As part of her dispute, Plaintiff enclosed a copy of her driver's license, social security card, a bank statement, and Experian credit reports.

48.     Plaintiff requested that Experian forward a copy of her letter to Amex.

49.     Experian forwarded Plaintiff's dispute to Amex and requested that Amex conduct an investigation. *See* 15 U.S.C. § 1681 i(a)(2).

## H.     December 7, 2017 Experian Response and Updated Credit Report.

50.     On December 7, 2017, Plaintiff received her dispute results from Experian stating that the Amex account had been updated. Experian responded:

> Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute, and update their records and systems as necessary.
> […]
>
> **Here are your results**
>
> We have completed the processing of your dispute(s)
>
> **Credit items**
>
> Amex [account ending in] 6593
> Outcome: Updated – Information on this item has been updated. Please review your report for the details.

Exhibit H.

51.     Experian's response also enclosed a copy of Plaintiff's "updated" credit report with the dispute results. Id.

9

52.     In the updated report, Experian still reported the Amex account as charged-off the same month as the date of the credit report, December 2017.

53.     Experian's updated report changed the date the Amex account was scheduled to continue on record until July 2018.

54.     Experian's updated report also reduced the amount being reported as past due by removing some of the added late fees.

55.     Experian's updated report did not reflect the correct charge-off date of 2013, or the date of Plaintiff's first delinquency.

56.     In the updated December 2017 report, Experian specifically reported:

   a.  Charge-Off: December 2017;
   b.  Date of Status: November 2017;
   c.  Status: "Account charged off/Never late $4,642 written off $2,623 past due as of Dec 2017. **This account is scheduled to continue on record until Jul 2018**;" and
   d.  Comment: "Account closed at credit grantor's request."

Id. (emphasis added).

57.     Experian stated that Plaintiff could contact Amex directly for more information.

I.     **Plaintiff's January 8, 2018 Dispute Letter to Amex.**

58.     On January 8, 2018, Plaintiff sent a dispute letter to Amex disputing the reporting of the Amex account on her Experian credit report. Exhibit I.

59.     Plaintiff disputed the date that Amex was reporting the account as charged-off, stating that the account had been charged off in 2013, and the charge-off date was not being accurately reported to Experian.

60.    Plaintiff also disputed the additional fees that had been added to her past-due balance reported every month.

61.    With her dispute, Plaintiff included a copy of her Experian report, a copy of her driver's license, and her social security card.

**J.    January 18, 2018 Letter from Amex.**

62.    On January 18, 2018, Amex sent Plaintiff a letter that it was responding to her "most recent correspondence regarding [her] American Express account," and that it could not respond because the address on her correspondence did not match the address in its records. Exhibit J.

63.    In response to Amex's letter, Plaintiff called Amex and verified her address.

**K.    January 24, 2018 Experian Response and Updated Credit Report.**

64.    On January 24, 2018, without Plaintiff sending another dispute to Experian directly, Plaintiff received her dispute results from Experian stating that the Amex account had been updated. Experian responded:

> Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute, and update their records and systems as necessary.
> [...]

**Here are your results**

We have completed the processing of your dispute(s).

**Credit items**

Amex [account ending in] 6593
Outcome: Updated – The information on this item has been verified as accurate; however, information unrelated to your dispute has been updated  Please review your report for details.

Exhibit K.

65.      Experian provided a copy of Plaintiff's "updated" credit report with the dispute results. Id.

66.      In the updated January 24, 2018 report, Experian continued to report the wrong charge-off and purge dates for the Amex account.

67.      Experian specifically reported the Amex account as charged-off in January 2018, and that the reporting of the Amex account was scheduled to continue on record for seven years thereafter, until October 2024.

68.      Experian increased the past-due balance reported on the Amex account and added comments regarding Plaintiff's dispute.

69.      Experian added comments that the report had been updated from the processing of Plaintiff's dispute of the Amex tradeline.

70.      Experian specifically reported:

   a.  Charge-Off: January 2018;

   b.  Date of Status: January 2018;

   c.  Status: "Account charged off/Never late $4,642 written off $3,195 past due as of Jan 2018. **This account is scheduled to continue on record until Oct 2024;**"

    d.   Comment: "Account information disputed by consumer **(Meets requirements of Fair Credit Reporting Act)**;" and

    e.   Comment: "Account closed at credit grantor's request. **This item was updated from our processing of your dispute in Jan 2018.**"

Id. (emphasis added).

**L.**    **February 7, 2018 Letter from Amex.**

71.    On January 18, 2018, Amex sent Plaintiff a letter stating that it was responding to her recent inquiry regarding her Amex account. Exhibit L.

72.    Amex's response letter did not address any of the issues raised in Plaintiff's January 8, 2018 dispute letter or the re-reporting of inaccurate information on the Experian report.

73.    Amex merely provided the date the account was opened, a present balance of $4,642.21, and a note that the account has been charged-off, but not the date of Plaintiff's first delinquency or the date of the reported charge-off.

74.    Amex's letter verified that it instructed the credit bureaus to report her Amex account as "in dispute."

**M.**    **February 8, 2018 Credit Denial.**

75.    In the intervening period, Plaintiff applied for a First Bank credit card.

76.    On February 8, 2018, Plaintiff received a denial of her credit card application.

77.    The credit denial was based upon her Experian credit report.

78.    On February 15, 2018, First Bank sent Plaintiff a formal denial letter stating the denial was based upon (a) serious delinquency, and public record of collection filed, (b) ratio of balance to limit on bank rev or other rev account too

high, and (c) too few accounts currently paid as agreed on Plaintiff's Experian credit report. Exhibit M.

79.    Experian continues to report inaccurate information for Plaintiff's Amex account on her credit report.

80.    On February 27, 2018, Amex added a comment to Plaintiff's Experian report that her dispute had been resolved. When Amex added the comment, Plaintiff's credit score dropped 45 points.

**N.    Damages.**

81.    Plaintiff has suffered damages proximately caused by Amex and Experian's conduct, including:

i.    Postage fees to send her dispute letters;

ii.    Emotional distress, stress, anxiety, and loss of sleep;

iii.    Time and expense of pulling her credit report to verify the reporting of the Amex account;

iv.    Believing that the Amex account may continue to be reported more than seven years past Plaintiff's first date of delinquency and charge-off by Amex;

v.    Adverse information on her credit reports and a negative impact to her credit rating;

vi.    An inability to improve her credit score during the dispute process;

vii.    A lower credit score; and

viii.    Having to hire attorneys to combat the improper credit reporting.

82.    Additionally, as a result of the furnishing and reporting of false information regarding the Amex account on Plaintiff's Experian credit report – and

Defendants' failure to correct the reports after Plaintiff's disputes – Plaintiff was denied credit, including being denied two credit applications for which she otherwise qualified for.

### COUNT I – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

83. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

84. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

85. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

86. Experian's reporting and collection practices are regulated by the FCRA.

87. As a major credit reporting agency (CRA), Experian is a member of the Consumer Data Industry Association (CDIA).

88. The CDIA maintains a standardized data reporting format called the Metro 2 format.

89. Metro 2 is the standardized format used in the credit-reporting industry for reporting information about consumer accounts to promote compliance with the FCRA.

90. The Metro 2 format requires that the "date of first delinquency" be disclosed when a CRA reports a delinquent account.

91. Field 25 of the Metro 2 format is labeled "FCRA/date of first delinquency," and this field must be reported on the tradeline for a delinquent credit account, including charged-off accounts.

92. An entity that notifies Experian (or any other CRA) of a delinquent account must provide, within ninety days, the date of first delinquency on the account, which is "the month and year of the commencement of the delinquency on the account that immediately preceded the action." 15 U.S.C. § 1681s-2(a)(5) (A).

93. Experian stores this date internally in a field in a consumer's credit file labeled "DFD/DLA", with "DFD" referring to the "date of first delinquency."

94. Experian did not report the "date of first delinquency" on Plaintiff's credit report.

95. Experian reported a "date of status" instead of a "date of first delinquency."

96. The definition of "date of status" was unclear.

97. The "date of status" appeared to reference the "status" field on Plaintiff's Experian report that disclosed the date that the account is scheduled to continue on record.

98. Experian did not disclose the "date of first delinquency" in the "date of status" or "status" field on Plaintiff's Experian report.

99. By failing to report the date of first delinquency clearly and accurately, Experian reported an incorrect "purge date" of the Amex account; *i.e.*, the date that the negative reporting was scheduled to continue on record.

16

100.   Metro 2 also provides code to report an "unpaid balance reported as a loss (charge-off)" on a consumer credit report.

101.   Experian reported a charge-off on the Amex account, but did not follow the Metro 2 format and reported the incorrect charge-off date.

102.   Experian reported different charge-off dates on different reports.

## A.   Violation of § 1681c.

103.    Section 1681c(a)(4) prohibits CRAs from releasing consumer reports containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

104.   The seven-year period begins to run 180 days after the beginning of the delinquency immediately preceding the collection, charge-off, or similar action. *Id.* § 1681c(c)(1).

105.   By failing to report the date of first delinquency accurately, Experian failed to report the starting date clearly and accurately for the seven-year period of time in which the Amex account was scheduled to continue on record.

106.   By reporting an inaccurate charge-off date, Experian failed to report the starting date clearly and accurately for the seven-year period of time in which the Amex account was scheduled to continue on record.

107.   Experian affirmatively reported the charge-off date, and date that the negative reporting of the Amex account was scheduled to continue on record, but failed to disclose the correct dates on Plaintiff's credit file clearly and accurately even after her disputes.

17

108. Experian violated § 1681c by: (a) failing to report the "date of first delinquency" clearly and accurately; (b) reporting an incorrect charge-off date; and (c) miscalculating the date that the Amex account would continue on record so it would be on record for more than seven years.

**B.    Violation of § 1681e(a).**

109. Experian violated § 1681e(a) by failing to maintain reasonable procedures designed to avoid disclosure of obsolete credit information and violations of § 1681c.

110. Experian violated § 1681e(a) by issuing a consumer report containing information prohibited by § 1681c.

111. Experian violated § 1681e(a) by issuing a consumer report containing obsolete credit information; *i.e.*, that the account was scheduled to continue on record for more than seven years.

**C.    Violation of § 1681g(a)(1).**

112. Section 1681g(a)(1) of the FCRA requires that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

113. "File" means the information included in the consumer report produced by a CRA to businesses. 15 U.S.C. § 1681g(a)(1)

114. FCRA section 1681g(a)(1) requires that a CRA clearly and accurately disclose all information in a consumer's credit file, including the dates of delinquency, charge-off, and purge date of delinquency.

115. The date of first delinquency, the charge-off date, and the purge date were a part of Plaintiff's credit file and Experian failed to accurately disclose those dates in violation of § 1681g(a)(1).

116. By omitting the date of first delinquency from the credit report, by reporting the incorrect charge-off date, and by reporting the incorrect purge date of the Amex account, Experian violated § 1681g(a)(1)'s requirement to "clearly and accurately disclose ... all information" in the consumer's credit file.

117. Experian violated § 1681g(a)(1) by failing to disclose all of the information in Plaintiff's credit file clearly and accurately with respect to the Amex account.

118. Experian failed to disclose the account information in a manner to allow consumers to compare the disclosed information to the information in their personal files.

**D.** <u>Violation of § 1681i(a).</u>

119. Experian prepared Plaintiff's credit reports containing inaccurate information, including the date of first delinquency, charge-off date, and purge date of the Amex account.

120. A simple review of Plaintiff's dispute and the documents that Plaintiff provided would have confirmed Plaintiff's last payment on the account was in 2012, that Amex charged off the account in 2013, and that additional past-due amounts could not be added after the charge-off when Amex was longer seeking to collect the account.

121. Amex falsely "confirmed" with Experian the accuracy of the false information it previously furnished to Experian regarding the Amex account, and provided information wholly inconsistent with Plaintiff's dispute.

122. Additionally, Experian failed to perform its own independent investigation, review the information provided by Plaintiff, or acknowledge the incorrect reporting. Instead, Experian continued to report that the Amex account would continue on record for more than seven years from the first date of delinquency.

123. Experian failed to conduct a reasonable reinvestigation of its reporting of the Amex account or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute under 15 U.S.C. § 1681i(a)(1).

124. Had Experian taken *any* steps to investigate Plaintiff's valid dispute and review the information provided, it would have determined that Plaintiff first became delinquent on the account in 2012, that the Amex account had been charged-off in 2013, the purge-date was 2019, Plaintiff did not owe a past-due amount on a charged-off account, and that Amex's reporting was false and erroneous.

125. Even when Experian represented to Plaintiff that it had investigated her dispute and that it had updated the information on her credit report, Experian continued to report inaccurate information.

126. Experian sent Plaintiff correspondence stating it had updated its records to reflect Plaintiff's dispute, while, at the same time, Experian willfully and

knowingly continued to report the inaccurate information; or it reported the inaccurate information after representing that it had investigated her dispute and made corrections to the account.

127. Experian violated 15 U.S.C. § 1681i(a)(2) by failing to record all relevant information that it received from Amex and Plaintiff with respect to Plaintiff's credit report, the Amex tradeline, the Amex account, the date of first delinquency, charge-off date, and purge date.

128. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Amex.

129. Experian violated 15 U.S.C. § 1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

130. Experian violated 15 U.S.C. § 1681i(a)(5)(B) by reporting disputed information without certification from Amex that the information was complete and accurate, and without sending notice of the basis for the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull her credit reports multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had an additional negative impact on Plaintiff's credit worthiness and credit score.

131. The FCRA requires that the credit reporting industry put in place procedures and systems to promote accurate credit reporting.

132.    Experian's perpetual noncompliance with the requirements of the FCRA is indicative of the reckless and willful nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

133.    Experian acted reprehensively by failing to report Plaintiff's first date of delinquency, charge-off date, and purge date so that she could not accurately calculate the date the negative reporting of the Amex account would continue on record.

134.    Experian acted reprehensively by reporting a new charge-off date on the Amex account each time that a new credit report was generated, so that the Amex account would continue on record indefinitely.

135.    Experian acted reprehensively by re-reporting inaccurate information with knowledge of Plaintiff's dispute and that the reporting was unclear and inaccurate.

136.    Experian failed to follow "reasonable procedures to assure maximum possible accuracy" of the information contained in a consumer's credit report. 15 U.S.C. § 1681e(b).

137.    Experian's failure to follow the Metro 2 format for the reporting of the debt or abide by the CDIA and FCRA requirements proximately caused damage to Plaintiff.

138.    By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

139.    Experian knew that the designations on Plaintiff's credit report were inaccurate, but continued to report the inaccurate designations.

140.    It is Experian's regular business practice to report disputed information without taking the required investigatory steps to verify whether such information is accurate.

141.    Experian acted willfully and knowingly with respect to the inaccurate reporting, its failure to correct the inaccurate reporting, and its decision to continue to report the inaccurate information on Plaintiff's credit report after her disputes – rendering Experian liable for punitive damages pursuant to 15 U.S.C. § 1681n.

142.    Alternatively, and at an absolute minimum, Experian was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff CORINNA MARLISS requests that this Honorable Court:

   a.    enter judgment in her favor and against Experian;

   b.    order the deletion of all adverse credit reporting on the Amex account;

   c.    award Plaintiff actual and statutory damages in an amount to be determined at trial;

   d.    award Plaintiff punitive damages in an amount to be determined at trial;

   e.    award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

   f.    award any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST AMEX)

143.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

144.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

145.    Amex is a "person" as defined by 15 U.S.C. § 1681a(b).

146.    Amex is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2, a "creditor" as defined by 15 U.S.C. § 1681a(r)(5), and a "financial institution" as defined by 15 U.S.C. § 1681a(t).

147.    Amex received formal written notice from Experian of Plaintiff's FCRA dispute, including all relevant information about Plaintiff's date of first delinquency and that Plaintiff disputed the charge-off and purge dates. Experian notified Amex directly and in writing that Plaintiff had challenged the information contained in her credit report.

148.    Plaintiff also provided Amex directly with all relevant information to establish the correct date of first delinquency, charge-off date, and purge date. Plaintiff provided Amex with all documents necessary to report accurate information to Experian.

149.    Once it received notice of Plaintiff's dispute, the FCRA required Experian to do the following: (1) conduct a reasonable investigation about the disputed information; (2) review all relevant information provided to it by the credit-reporting agencies; (3) report the results of the investigation to the agencies; and (4) if the information were found inaccurate or incomplete, report the results to

all credit-reporting agencies to which it originally provided the erroneous information. *See* 15 U.S.C. § 1681s–2(b).

150. Amex failed to conduct an investigation after receiving formal written notice of Plaintiff's disputes from Experian and from Plaintiff directly. Instead, Amex verified the reporting on Plaintiff's account.

151. A reasonable investigation by Amex would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continued to be reported on Plaintiff's credit file, verified by Amex, and re-reported after Experian represented to Plaintiff that it had updated her credit report based upon information received from Amex.

152. Amex did not correct or notify Experian of the true status of the Amex account, did not update the information reported to Experian, and did not delete the inaccurate reporting from Plaintiff's credit file after receiving notice of Plaintiff's disputes from Experian and Plaintiff directly.

153. Instead, Amex falsely confirmed its inaccurate reporting with knowledge that the designations were false. Had Amex reviewed the information provided by Plaintiff and Experian, it would have notified Experian and corrected the inaccurate designations instead of verifying the inaccuracies.

154. With respect to the FCRA violations herein, Amex continues to furnish incorrect information on the Amex account and has added comments to the Amex tradeline that Plaintiff's dispute has been resolved and its reporting complies with the FCRA.

A.   <u>Violation of 15 U.S.C. § 1681s-2(b)(1)(A).</u>

155.   Amex violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to investigate the disputed information after receiving formal written notice from Experian regarding Plaintiff's disputes.

B.   <u>Violation of 15 U.S.C. § 1681s-2(b)(1)(B).</u>

156.   Amex violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information Experian provided in its formal written notice to Amex regarding Plaintiff's disputes.

C.   <u>Violation of 15 U.S.C. § 1681s-2(b)(1)(C).</u>

157.   Amex violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation after Plaintiff provided written disputes to Experian and after Experian provided Amex with formal written notice regarding Plaintiff's disputes, and after discovering the inaccurate reporting in light of information sent directly from Plaintiff.

D.   <u>Violation of 15 U.S.C. § 1681s-2(b)(1)(E).</u>

158.   Amex violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete or permanently block the inaccurate designation on Plaintiff's file, after Plaintiff provided written disputes to Experian and after Experian provided Amex formal written notice regarding Plaintiff's disputes.

E.   <u>Violation of 15 U.S.C. § 1681s-2(b)(2).</u>

159.   Amex violated 15 U.S.C. § 1681s-2(b)(2) by failing to take the required action or conduct a reasonable investigation with respect to Plaintiff's credit file by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

160.    Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Amex did not correct the errors or tradelines to report accurately and completely. Instead, Amex furnished and re-furnished information that it knew to be inaccurate.

161.    By deviating from the standards established by the servicing industry and the FCRA, Amex acted with reckless disregard for its duties as a financial institution to report accurate and complete consumer credit information.

162.    The FCRA requires a financial institution to certify that disputed information is correct before it may be reported on a consumer's file. The fact that Amex either certified the erroneous charge-off date or furnished the disputed information without obtaining such a certification represents a complete disregard of the mandates of the FCRA, and constitutes a willful disregard for Plaintiff's rights as a consumer.

163.    Amex knew the inaccurate reporting on Plaintiff's credit report would have a significant adverse effect upon Plaintiff's credit worthiness.

164.    The inaccurate reporting on Plaintiff's credit report significantly and adversely affected Plaintiff's reported credit worthiness and caused credit denials.

165.    It is Amex's regular business practice to report false information without taking the required investigatory steps to meaningfully verify if such information is true.

166.    Amex's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless and willful nature of its conduct.

167. Amex acted reprehensibly by furnishing and reporting inaccurate information when it had actual knowledge that the designations were inaccurate, deceptive, and dishonest.

168. Amex's failure to abide by FCRA requirements resulted in damage to Plaintiff.

169. Amex acted willfully and knowingly with respect to the inaccurate reporting, its failure to correct the inaccurate reporting, and its decision to continue to furnish the inaccurate information on Plaintiff's credit report after her disputes – rendering Amex liable for punitive damages pursuant to 15 U.S.C. § 1681n.

170. Alternatively, and at an absolute minimum, Amex was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff CORINNA MARLISS requests that this Honorable Court:

    a.    enter judgment in her favor and against Amex;

    b.    order the deletion or modification of all adverse credit reporting relating to the Amex account;

    c.    award Plaintiff actual and statutory damages in an amount to be determined at trial;

    d.    award Plaintiff punitive damages in an amount to be determined at trial;

    e.    award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

    f.    award any other relief as this Honorable Court deems just and appropriate.

Dated: March 19, 2018

Respectfully submitted,

CORINNA MARLISS, plaintiff,

By: /s/Tod A. Lewis

Phillip A. Bock (6224502)
Tod A. Lewis (6256282)
James M. Smith (6285183)
Mara A. Baltabols (6299033)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com